### Huntingdon County v. Rinker

*David A. Ody*, for plaintiff.
*Thomas E. McDowell*, for defendant.

VAN HORN, *S.J. specially presiding*, November 24, 1986 — Huntingdon County, plaintiff herein, seeks reimbursement for certain expenditures it made for the evaluation, hospitalization and treatment of defendant, Steven D. Rinker, during his incarceration in the Huntingdon County Jail. The case duly came before us for a nonjury trial de novo after plaintiff perfected a timely appeal from an award of a board of arbitration in favor of defendant. The facts have been stipulated by counsel and may be summarized as follows.

Sometime prior to May 24, 1984, defendant was arrested on various charges, including a charge of rape, after which he was committed to the Huntingdon County Jail in default of bail. He subsequently became seriously depressed and, upon the initiative of the warden, he was examined and evaluated by a psychiatrist, Frederick E. Wawrose, M.D., on May 25, 1984. As a result of the evaluation, Dr. Wawrose concluded that defendant was potentially suicidal and that he was in need of psychiatric hospitalization. On the basis of Dr. Wawrose's findings, the warden filed a petition with this court pursuant to the Mental Health Procedures Act of 1976, 50 P.S. §7101 et seq., asking that defendant be involuntarily committed to a mental health facility for inpatient treatment.

A hearing on the petition for involuntary treatment was held on May 30, 1984, before the Hon. Newton C. Taylor, President Judge of this court. Dr. Wawrose testified at the hearing and defendant was

represented thereat by his present counsel. Judge Taylor found that defendant was severely mentally disabled and in need of treatment, and that the security of the forensic unit at Mayview State Hospital was needed because of the serious charges pending against defendant. In view of his findings, Judge Taylor entered an order committing defendant to Mayview for inpatient treatment for a period not to exceed 90 days.

Defendant underwent observation and treatment at the Mayview State Hospital from May 31, 1984, until July 1, 1984, inclusive. Upon his discharge from Mayview on July 2, 1984, he was returned to the Huntingdon County Jail where he was incarcerated until September 13, 1984, when he was found not guilty at a trial before the court and a jury on all of the charges against him. See Criminal Division no. 84-210. After the verdict was announced, the trial judge entered an order of court imposing the costs of prosecution on the County of Huntingdon.

Plaintiff, Huntingdon County, has expended the following amounts for defendant's evaluation, observation and treatment:

Mayview State Hospital—
observation and treatment, May 21,
1984 to July 1, 1984, inclusive...........$6,330.00
Frederick E. Wawrose, M.D.
evaluation on May 25, 1984 ............... 45.00
attending hearing on May 30, 1984... 45.00

Defendant admits that he has the financial ability to reimburse the county for these expenditures. We conclude — as the county contends — that he should be required to do so. We reach our conclusion for the following reasons.

Initially, we note that whenever a person who is confined in jail becomes seriously ill and it is necessary that he be removed therefrom for treatment, a

duty arises to provide for his confinement and care in some other suitable institution where proper treatment may be administered. 61 P.S. §81. However, the correctional system is not a medical provider and is not solely liable for the expense of treatment of every person who is incarcerated. Com. v. Lyles, 77 Pa. Commw. 15, 464 A.2d 712 (1983).

Secondly, we reject defendant's contention that arrangements for his treatment could and should have been made at a Veterans Administration facility. Where (as here) a prisoner is charged with the offense of rape, and where (as here) the court, after hearing, deems it advisable, security equivalent to the institution to which he is incarcerated must be afforded. In such event, section 401 of the Mental Health Procedures Act, 50 P.S. §7401, specifically provides that commitment to a Veterans Administration facility is improper. Defendant's involuntary commitment to Mayview State Hospital was appropriate and was properly accomplished.

Third, the Mental Health Procedures Act provides that proceedings for the commitment of a prisoner — whether awaiting trial or serving sentence — who is or becomes severely mentally disabled may be conducted in the same manner as if he were not incarcerated, 50 P.S. §7401(a). And section 501 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4501, provides that "whenever public funds are expended . . . on behalf of a mentally disabled person, the governmental body expending such funds may recover the same from such person subject to the regulations of the department [of Public Welfare] and for this purpose liability is hereby imposed upon such person admitted, committed or otherwise receiving any service or benefit under this act for all costs, payments or expenditures with reference thereto . . . ." Moreover, although section

505 of said Act, 50 P.S. §4505, imposes a limited liability upon the county for the care and maintenance of mentally ill prisoners in the first instance, subsection (c) thereof clearly provides that any moneys expended by a county by reason of this section may be recovered from such person.

Fourth, section 504 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4504, provides that the liability of a mentally disabled person shall be the amount fixed or charged by the Secretary of the Department of Public Welfare; and section 506 of said act, 50 P.S. §4506, provides that the Commonwealth shall bill the proper county for prisoner commitments, and that such bills shall be promptly paid by the county. Subsection (c) of section 506 further provides that all moneys due by reason of any liability imposed upon any person for care and treatment for which the county makes an expenditure shall be collected by the county. Although the secretary is so empowered by the act, he is not required to abate, modify, compromise or discharge the liability so imposed. Weiss v. Com., Dept. of Public Welfare, 77 Pa. Commw. 353, 465 A.2d 1319 (1983). In the case before us defendant admits that he has the financial ability to make reimbursement, and he points to no provision of law, departmental regulation, nor principle of equity pursuant to which he would be entitled to relief.

Finally, although the costs of prosecution in the criminal action against defendant were placed on the county, the expenditures with which we are here concerned were incurred for treatment only, and not for the purpose of determining defendant's competency to stand trial or the availability of an insanity defense. Thus, they clearly were not costs of prosecution, nor were they impliedly taxed as such

by the order of the court entered at the conclusion of defendant's trial.

Wherefore, we enter the following

### ORDER OF COURT

And now, November 24, 1986, the court finds for plaintiff, Huntingdon County, and against defendant, Steven D. Rinker, in the amount of $6,420.

The prothonotary shall notify all parties or their attorneys of record of the date of the filing of this decision, which notice shall have attached thereto a copy hereof.